**FILED**

NOV 15 2023

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____ C V _____
DEPUTY CLERK

Jacqueline Coleman- *in pro per*
6180 8th. Ave
Sacramento, CA. 95820
(916)701-6711
whackyjacquie@gmail.com

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

JACQUELINE COLEMAN, an
individual;

Plaintiff,

v.

COUNTY OF SACRAMENTO; ERIK
COHEN, in his individual and de-facto
official capacity; CYNTHIA COHEN,
in her individual and de-facto official
capacity; STATE OF CALIFORNIA;
and DOES 1-10,

Defendants.

Case No. 2:23-cv-2677-ΛJM-CKD (PS)

**VERIFIED FIRST AMENDED COMPLAINT FOR CIVIL RIGHTS VIOLATIONS SEEKING DAMAGES ANNULMENT AND DECLARATORY JUDGMENT**

1. 42 U.S.C. §1983
   (Right to Family – Due Process)

2. 28 U.S.C.  §1651
   (Error Of Jurisdiction )

3. 28 U.S.C. §2201
   (Conspiracy to Violate Civil Rights)

4. (Facial Challenge to Cal. Probate Code §2250(e)(1) – Due Process)

   28 U.S.C. § 2201
5. (As-Applied Challenge to Cal. Probate Code §2250(e)(1) – Due Process)

6. Intentional Infliction of Emotional Distress

7. Negligent Infliction of Emotional Distress

**DEMAND FOR JURY TRIAL**

1
2

## TABLE OF CONTENTS

3    I.  SHORT PLAIN STATEMENT OF THE CLAIM.........................................2

4    II.  JURISDICTION ...............................................................................................4

5    III. VENUE ...........................................................................................................4

6    IV. PARTIES .........................................................................................................4

7        A. Plaintiff .................................................................................................4

         B.  Defendants ...........................................................................................4
8
         C.  Doe Defendants....................................................................................6
9
     V.  FACTUAL ALLEGATIONS.......................................................................6

10   VI. ARGUMENT WHY ERIK COHEN AND CYNTHIA COHEN
11       SHOULD BE HELD AS A STATE ACTORS FOR
         CIVIL RIGHTS PURPOSES ......................................................................14
12
         A. Section 1983 Action Is Appropriate Against a Private Actor Who
13          Works Together With a Government Actor in a Common Plan...........14
14          1.  The Joint Action Test is Well-Established ................................. 14

15          2.  The Joint Action Test Is Satisfied Here..................................... 14

16          3.  Conclusion to De-Facto State Actor .......................................... 19

17   VII.  PROCEDURAL HISITORY FURTHER EVIDENCING CONSPIRACY
          POLICY OF MAKING FRAUDULENT REPRESENTATIONS TO
18        THE COURT ..............................................................................................19

19   VIII.  CAUSES OF ACTION..............................................................................20
            FIRST CAUSE OF ACTION ......................................................... 20
20
            SECOND CAUSE OF ACTION .................................................... 25
21
            THIRD CAUSE OF ACTION ........................................................ 26
22
            FOURTH CAUSE OF ACTION .................................................... 27
23
            FIFTH CAUSE OF ACTION ......................................................... 29
24
            SIXTH CAUSE OF ACTION......................................................... 30
25
            SEVENTH CAUSE OF ACTION .................................................. 31

26   IX. PRAYER FOR RELIEF ...........................................................................32

27   X.  DEMAND FOR JURY TRIAL...................................................................33

28   XI. VERIFICATION OF JACQUELINE COLEMAN....................................34

1

## I.    SHORT PLAIN STATEMENT OF THE CLAIM

1.    Plaintiff Jacqueline Coleman and Defendant Erik Cohen are the legally separated and biological parents of "E. F. C", now aged 9. At all relevant times, Evelyn was a 3 year old minor child.

2.    On September 14, 2016, while working as agents of the Sacramento County Child Abduction Unit, Defendants Erik Cohen (acting under the authority of the California Corrections and Probation Department) and Cynthia Cohen (Erik's mother) secretly went to court and fraudulently obtained a Letters of Temporary Guardianship order over E. F. C.

3.    Ms. Cohen (a, widow with significant frontal lobe damage from  maculopathy since infancy, which left her legally blind) , and Mr. Cohen (a previously convicted violent felon , because he is a malignant narcissist ) conspired and fraudulently concealed the residency of the minor from dates ; 12/11/2013- 03/2016  from the Court, despite admitting on the record that E. F. C had been living with her parents.

4.    The actions of Defendants constituted a fraud upon the court because (a) the Letters of Temporary Guardianship order was made at a secret, unnoticed (thus unconstitutional) hearing; (b) at the secret hearing, Defendants actively concealed the fact that three months *prior*  E. F. C was residing with her parents and E. F. C had been in the company of Cynthia only twice prior to the; (c) Petition for Temporary Guardianship was *entirely* founded on the fact Mr. Cohen was incarcerated for  domestic violence , Cohen was also subject to formal probation; (d) Defendants supported their efforts by making numerous intentional misrepresentations; (e) but for the Court's reliance on Defendants' intentional misrepresentations, the Letters of Temporary Guardianship would not have been issued – not on September 14, 2016, and not ever.

5.    Later in the afternoon of October 02, 2016, Jacqueline showed up at Tahoe Park Pre- School to pick up her daughter  E. F. C. However, Cynthia also showed up, now armed with the fraudulently-obtained Letters of Temporary Guardianship

6.      order, and backed up by the threat of force inherent in the authority of the Sacramento County Child Abduction Unit.

7.      Cynthia showed the Letters of Temporary Guardianship order to Jacqueline. Fearing the authority of the government, believing that government agents are authorized to use force to carry out court orders, Fear of government force is the only reason Jacqueline Coleman allowed Cynthia Cohen to take E. F. C on October 02, 2016.

8.      Such facts *shock the conscience*.

9.      Thus, Plaintiff come to this Honorable United States District Court and bring this civil rights lawsuit pursuant to 42 U.S.C. §1983, seeking to redress the deprivation by Defendants, at all times herein acting under color of state law, of the fundamental right to family unity secured to Plaintiff under the Due Process and/or Equal Protection clauses of the Fourteenth Amendment to the United States Constitution.

10.     Alternatively, if for whatever reason any Defendant is not held as a State Actor, then Plaintiff seek redress for Intentional and/or Negligent Infliction of Emotional Distress.

11.     Finally, Plaintiff challenge the constitutionality of California Probate Code

12.     2250 (e)(1) ("Statute"), both facially and as applied, as this statute evidently allows a judge to "dispense with" the Notice requirements to parents of a pending Petition for Temporary Guardianship regarding their child.

11.     While the challenged Statute explicitly requires Notice to both parents (and also to the child if over the age of 12), it also speaks of "good cause for the court to order that this notice not be delivered." In practice, dispensing with the Notice requirements (thus dispensing with parents' fundamental rights) involves nothing more than the checking off of a single check-box on court form GC-140 - Order Appointing Temporary Guardian.

COLEMAN v COUNTY - FIRST AMENDED COMPLAINT

**II.    JURISDICTION**

12.    Original federal subject matter jurisdiction is conferred on this Court by 28 U.S.C. §1343(3) and 1343(4), which provide for original jurisdiction in this Court of all suits brought pursuant to 42 U.S.C. §1983. Jurisdiction is also conferred by 28 U.S.C. §1331(a) because claims for relief derive from the United States Constitution and the laws of the United States. Jurisdiction of this Court over any claim for Declaratory Relief is conferred by 28 U.S.C. §2201.

**III.    VENUE**

13.    Venue properly lies in the Eastern District of California, in that the events and circumstances herein alleged occurred in the County of Sacramento, and at least one Defendant resides in the County of Sacramento.

**IV.    PARTIES**

**A.    Plaintiff**

**V.    Plaintiff Jacqueline Coleman** - is an individual, the ex-wife of Erik Cohen, and the kind, loving biological mother of minor child E. F. C.

**Plaintiff**    E. F. C.- is an individual, the minor of , Jacqueline Coleman,

**VI.**    and Erik Cohen

**B.    Defendants**

**VII.    Defendant County of Sacramento Defendant ("County")** - is a municipality in corporate form, organized and existing under the laws of the State of California. County promulgated, encouraged, and/or permitted, the policies, patterns, and practices under which the individual Defendants, and Does 1 – 10, committed the acts or omissions complained of herein. Said policies, practices, customs, and/or procedures, whether or not promulgated in written form, include, but are not limited to, the policy of permitting false and fraudulent representations to be made to a Court of law as a pretext for seizing children, and as a pretext to pay for the services of minor's counsels, so as to obtain increased

4

1 funding, whether that increased funding derives from federal funds under Title

2 IV, or from any other source(s).

3 17.    **Defendant Erik Cohen ("Mr. Cohen")** – is an individual, an ex-felon,

4 appointed by the Sacramento Superior Court,  supervised by the California

5 Corrections and Probation Department, to act as minor's legal aid in joint action

6 with County of Sacramento, including but not limited to joint action with the

7 Sacramento County Child Abduction Unit. As such, Mr. Cohen was entrusted to act

8 as a fact finder, and to report about the child's best interests including the health,

9 safety, and welfare of the child. Mr. Cohen has a prior history of disciplinary actions

10 against him by the California Corrections and Probation Department, where his

11 defrauding his own legal insurance ARAG by double-dipping on reimbursement for

12 attorney fees on purpose was found to constitute moral turpitude. Thus, he is a

13 perfect candidate to carry out the policies and customs of County, which require

14 defrauding both individuals and courts of law so as to increase and expand County's

15 "need" for funding the costs of minor's counsels, whether such funding derives

16 ultimately from federal Title IV money, or California taxpayers, or Sacramento

17 County taxpayers, or anywhere else. Mr. Cohen is sued as a de-facto State Actor

18 working in joint action with County, including but not limited to joint action with

19 the Sacramento Child Abduction Unit.  Plaintiff seek redress for civil rights

20 violations arising from Mr. Cohen's harmful actions under the policies and customs

21 of County. Alternatively, Mr. Cohen is sued in his individual capacity for his

22 harmful actions outside the policies and customs of County.

23 18.    **Defendant Cynthia Cohen ("Ms. Cohen")** – is an individual, legally blind

24 from infancy, and the frontal lobe compromised - mother of Defendant Erik Cohen.

25 Ms. Cohen is sued as a de-facto State Actor (under the Joint Action Test) for her

26 involvement in the conspiracy to deprive Plaintiff of her civil rights. Alternatively,

27 Ms. Cohen is sued in her individual capacity for harmful actions outside the policies

28 and customs of County.

19.     **Defendant State of California ("State")** – is a government body organized under the California Constitution, as authorized by the United States Constitution.

20.     State is sued only for purposes of challenging the constitutionality of Cal. Probate Code § 2250 (e)(1), and for obtaining an injunction against conducting unnoticed temporary guardianship hearings without good cause to dispense with the Notice requirements to parents.

### C.   Doe Defendants

21.     **Doe Defendants** – are unknown individuals working for County who are responsible for devising, coordinating and otherwise participating in the policies and customs complained of here, and which constitute civil rights violations.

## V.    FACTUAL ALLEGATIONS

22.     At all times relevant herein, prior to the October 02, 2016 seizure and removal of E.F.C by Defendants, Jacqueline and Erik Cohen raised, nurtured, provided guidance, and cared for E.F.C .

23.     At all relevant times prior to the wrongful seizure and continued detention of E.F.C by Defendants, Jacqueline and Erik Cohen enjoyed the company, companionship, and society of E.F.C , and all other benefits and burdens of their rights of familial association.

24.     During 2016, there were periods of time when E.F.C 's parents allowed the then-3-year-old to stay with her grandmother, Defendant Cynthia Cohen. At no time did Jacqueline Coleman ever agree to, or discuss, or even consider surrendering her parental rights.

25.     Defendant Cynthia Cohen is a widow. Ms. Cohen does not like married couples, and has not since been interested in forming a relationship with a man. However, she is fond of children and long desired a daughter of her own. Ms. Cohen holds a particular animus against Jacqueline  because Erik

and Jacqueline Coleman formed a long-lasting and loving relationship, and had E.F.C . For this reason, Ms. Cohen became increasingly resentful against Jacqueline and Erik Cohen.

26.    In 2016, Cynthia decided to defraud the legal process in order to seize E.F.C . As Ms. Cohen learned, County and Erik Cohen were willing to assist her in defrauding the legal process to seize E.F.C , because County receives funding to pay for each minor's legal aid appointment from (KIN-GAP), and SSI.

27.    On or about June, 2016, Ms. Cohen initiated an investigation of Jacqueline Coleman by Department of Child and Family Services ("DCFS"). The allegation was that, about *3 months prior,* Jacqueline engaged in "domestic violence" in the care of her daughter. In fact, that ancient and vague allegation had already been made years before, thoroughly investigated by the police department, and found to have no merit. Nevertheless, and despite her knowledge that the allegations against Jacqueline  were baseless, Ms. Cohen complained to DCFS. **[EXHIBIT "E"**, p. 53]

28.    During October or November 2016, DCFS contacted Jacqueline and Erik Cohen to investigate Ms. Cohen's allegations. Jacqueline cooperated fully.

29.    On June 24, 2016, unbeknownst to Jacqueline Coleman, Cynthia Cohen secretly filed a Petition for Temporary Guardianship of E.F.C .

30.    On or about June 24, 2016, Cynthia Cohen mentioned to her son Erik that she intended to take E.F.C  away, using the legal process. At that time Cynthia knew of the upcoming September 14, 2016, hearing, but did not notify Jacqueline about it.

31.    By October 01, 2016 Plaintiff had become aware that Cynthia was attempting to do "something" in court regarding E.F.C . But at that time Plaintiff

7

1  did ***not*** know specifically what Cynthia planned to do, or when she planned to do

2  it.

3  32.    On October 01, 2016, fearing that Cynthia would indeed try to use the legal

4  process to take E.F.C away, but not knowing what or when, Jacqueline asserted

5  her fundamental right to parent and went to Tahoe Park Daycare, picked E.F.C

6  up, and took her home.

7  33.    On November 09, 2016, Hon. Steven M. Gevercer conducted the first

8  hearing on Ms. Cohen's Petition for Temporary Guardianship in the Superior

9  Court. Although not under oath, Ms. Cohen complained because:

10      [E.F.C ] was at the park with her father. She was there the other
        day and her mom **[Jacqueline Coleman]** **took her** from my son,
11      once she knew we were going to court.

12  **[EXHIBIT "B"]**, p. 39

13  34.    On October 01, 2016 it is true that Plaintiff was aware that Cynthia was

14  "going to court", and that is exactly why Jacqueline decided to take E.F.C , and

15  exactly why Jacqueline took E.F.C the day before. She is her parent and had

16  every right to take E.F.C .

17  35.    At no time was Plaintiff ever given Notice of the September 14,2016,

18  hearing. The DCFS investigation to the father was still pending at that time.

19  Judge Gevercer stated in terms that, at that time, Plaintiffs' fundamental right to

20  parent was still in existence:    **[EXHIBIT "C"**, p. 54, bolding added.]

    [Court] Pending hearing, the Court orders the Temporary Guardian to
21  allow reasonable visitation by Mother, without Father being present.
    **All temporary/prior orders shall remain in full force and**
22  **effect pending further hearing.**

23  36.    At no time was Plaintiff aware of the secret 09/14/2016  hearing that had

24  appointed Cynthia guardianship  letters. Petitioner believed a custody order prior

25  to the guardianship was in full force and effect, and that the 11/09/2016 hearing

26  was for Temporary Guardianship. At no time was Plaintiff served notice of the

27  09/14/2016 hearing for Temporary Guardianship or the 11/09/2016 hearing for

28  Temporary Guardianship.

37.     On November 04, 2016, DCFS completed its investigation of the kidnapping allegation against Jacqueline Coleman, and concluded once again that she was exonerated. [EXHIBIT "E", p. 53]

38.     At no time was Jacqueline Coleman under the impression her custody was in danger.

39.     On September 14, 2016, a secret, unnoticed Temporary Guardianship

40.     hearing took place before Judge Steven M. Gevercer in the Superior Court. As the record in that case makes absolutely clear, the UCCJEA not presented at the hearing. Judge Gevercer began that hearing referring to (1) jurisdiction of a court cannot be merely inferred from somewhere. It needs to be expressly provided in the clear language of any statute that such (2) stating:

> [Court]   **NEEDED: Residency of minor from 12/11/2013-03/2016, UCCJEA form.**

40.     Under any constitutionally permissible proceeding, that would have been the end of the September 14, 2016 hearing. Instead, and according to County's policy and custom, Mr. Cohen proceeded to falsely state that Jacqueline Coleman been homeless (completely false, she has never been homeless or anything close); that Jacqueline Coleman was "on the lam" and "avoiding the proceedings" (completely false, she hadn't been served Notice); that efforts had been made to notify Jacqueline Coleman (completely false and *nonsensical,* for E.F.C 's parent had no reason to avoid the hearing, knowing that she had already been cleared of the allegation).

41.     At the  September 14, 2016 secret Temporary Guardianship Hearing, when the Court inquired about the status of the UCCJEA form  and of Jacqueline Coleman's whereabouts  (which naturally would embody the UCCJEA form). Mr. Cohen stated:

9

[Cohen]   "CPS took [E.F.C ] from her mom and just dropped [E.F.C ] off at my moms house". "I was at work when this all happened".

[1.] Completely false, Erik  had been released from jail 3 days prior to Cynthia's petition for Temporary Guardian.

[2.] Completely  false and nonsensical, E.F.C  has never been removed by CPS from her  mother.

[3.] Completely false, E.F.C  was not in immediate danger. After Erik's 1st· arrest for violation of  a CPO, Jacqueline  asked the DA to amend the criminal protective order from peaceful to no-contact for 5 years, which was approved on 06/21/2016.

**[EXHIBIT "F"**, p. 55]

42.     The reason Mr. Cohen did not file his report at the  September 14, 2016 was that he had formed a specific intent to enrich himself on County, and private money by getting his mother appointed as the disabled minor's guardian, while County enriches itself by gaining a pretext on which to increase its funding.

43.     Plaintiff believes and on that basis allege that Mr. Cohen also failed to truthfully  inform  the court because he is a malignant narcissist who derives sadistic schadenfreude from inflicting emotional distress upon innocent human beings, as evidenced by his prior discipline by the California Department of Corrections for repeatedly violating a Criminal Protective Order. Anyone besides a narcissistic sadist would have learned his lesson and changed his ways.

44.     At the  September 14, 2016 hearing, Mr. Cohen threatened to invoke the power and authority of the **Sacramento County Child Abduction Unit** to locate and take E.F.C  child into their custody.

45.     In the preceding quotation, in saying "we", Erik Cohen was referring to himself and the Sacramento County Child Abduction Unit working together in joint action.

10

46.    The costs of operating the Sacramento County District Attorney Child Abduction Unit are paid for utilizing County funds. Likewise, the cost of Erik Cohen's services as minor's counsel are paid for utilizing County funds *eg.* [KIN-GAP].

47.  Under California Rules of Court 5.240, a court may appoint private counsel to represent a child in family law cases involving child custody or visitation, on a case by case basis. **Minors' counsel costs are paid for utilizing County funds**. According to the Court's records, minors' counsel costs increased by 17%, from $1.6 million in Fiscal Year (FY) 2016-17, to $1.8 million in FY 2017-18.

48.  According to the above report, as minor's lead counsel, Erik Cohen is nominally a "private" actor. But Mr. Cohen is appointed by a Superior Court Judge. Mr. Cohen's fraudulently-obtained appointment to represent E.F.C  in 2016-2017 contributed to the increase in costs for fiscal year 2017 reported by the Assistant Auditor-Controller.

49.  On June 5, 2019, the Family Law Supervising Judge issued THE FAMILY LAW SUPERVISING JUDGE'S AMENDED STANDING ORDER RE: APPOINTMENT OF MINOR'S COUNSEL, which states,

The County of Sacramento **shall pay** all or some of the cost of Minor's Counsel.

50.    The June 5, 2019 Standing Order goes on to establish escalating payment ceiling levels for the amount of money that minor's counsel can receive in a given case, based on how long the case litigates. For a minor's counsel, e.g.

 COURT; The Court **appoints** Cynthia Cohen as the Temporary Guardian of the Person of E.F.C  and Temporary Letters shall issue.
The Court notes the Father, Erik Cohen, has **no objection** to the granting of the guardianship.

**[EXHIBIT "C"**, p.45,  "E.F.C" added, bolding added]

11

1  Erik Cohen, the goal clearly appears to be to litigate long enough to reach

2  "LEVEL SIX", because that level *has no cost ceiling.*

3  51.    It is worth noting that Cynthia Cohen's Petition for Guardianship of E.F.C , in

4  which Mr. Cohen acted as minor's counsel, litigated for over 7 ½ years, with him

5  receiving reimbursements from his private legal insurance named ARAG, and

6  receiving money  directly from Jacqueline  for the same legal services. On

7  information and belief, Erik Cohen succeeded in reaching

8  "LEVEL SIX".

9  52.    Ms. Cohen was present at the September 14, 2016 secret hearing, but for

10  reasons unknown was not sworn in and not placed under oath. The Court inquired

11  of Ms. Cohen as to whether Jacqueline Coleman was served Notice. Suspiciously,

12  Ms. Cohen proffered a proof of service for a then-upcoming November 9th hearing,

13  thus indicating that she understood the concept and requirement for proof of service

14  of Notice to the parents.

15  53.    When Judge Gevercer asked Ms. Cohen about whether knew she "was

16  coming in today" (September 14,2016), Ms. Cohen falsely stated "Yes". In fact,

17  mother did not know about the hearing, or else she would have been there. The fact

18  that mother subsequently appeared dozens of times over the next 7 ½ years in the

19  ensuing, ultimately futile guardianship proceeding lays waste to any idea that

20  Plaintiff were avoiding anything.

21  54.    According to the scheme with Mr. Cohen and County, Ms. Cohen falsely

22  stated that she "left a message on the voice mail", and that the mom was

23  "sent an email". Undisputedly Mother, Jacqueline Coleman POS filed, served on

24  10/13/2016, Copy of Notice of Hearing for the 11/09/2016 hearing not attached to

25  POS.

26  55.    Undisputedly Ms. Cohen was not under oath. Undisputedly Ms. Cohen is

27  party to that guardianship case, thus could not effect valid service even if she had

28  attempted to do so, which she did not.

55.    Also at the September 14, 2016, Mr. Cohen stated that:

> **We** know that [E.F.C ] attends Tahoe Day Care. So with appropriate letters and orders, [Defendant] would be authorized to give a copy to the school administration and they can preclude anyone [e.g. Jacqueline Coleman , the legal, biological parent] from picking up the child without [Cynthia's] permission.

56.    In the preceding quotation, "we" refers to Erik Cohen, and County of Sacramento in joint action.

57.    On September 14, 2016, relying on the false representations made by Mr. Cohen and Ms. Cohen, Judge Gevercer issued the Letters of Temporary with - No Expiration Date - Guardianship order.

58.    Later on October 02, 2016 Jacqueline Coleman came to pick up her daughter E.F.C from Tahoe Day Care Center. This time, Cynthia Cohen also showed up, with the fraudulently-obtained Temporary Guardianship papers in hand.

59.    Plaintiff believe, and on that basis allege that agents of the Sacramento County District Attorney Child Abduction Unit were also present at Tahoe Day Care Center on October 02, 2016 , prepared to use whatever level of force was necessary to compel compliance with the fraudulently-obtained Letters of Temporary Guardianship order.

60.    Now aware of the fraudulently-obtained Letters of Temporary Guardianship order, and fearing the power and force of the County of Sacramento, Jacqueline submitted and allowed E.F.C to leave with Cynthia.

61.    At no time did Jacqueline voluntarily surrender her fundamental right to parent E.F.C .

62.    At a time Erik Cohen did voluntarily surrender his fundamental right to parent E.F.C .

13

## VI. ARGUMENT WHY ERIK COHEN AND CYNTHIA COHEN SHOULD BE HELD AS A STATE ACTORS FOR CIVIL RIGHTS PURPOSES

### A. Section 1983 Action Is Appropriate Against a Private Actor Who Works Together With a Government Actor in a Common Plan

#### 1. The Joint Action Test is Well-Established

**VII.** Nominally, Defendants Erik Cohen and Defendant Cynthia Cohen are not government officials. However, the U.S. Supreme Court established precedent under which a § 1983 claim will lie against a private citizen. *Adickes v. S.H. Kress & Co.* 398 U.S. 144 (1970) ("*Adickes*"), and see also *Smith v. Brookshire Bros.*, 519 F.2d 93 (5th Cir. 1975); *Barrett v. Harwood*, 189 F.3d 297, 304 (2d Cir. 1999).

**VIII.** Three alternative tests have evolved to determine whether a private citizen might be considered a state actor for purposes of Section 1983: (1) The public function test; (2) The state compulsion test; or (3) The nexus/joint action test. *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1277 (11th Cir. 2003) ("Focus"), citing *Willis v. Univ. Health Servs.*, 993 F.2d 837 (11th Cir. 1993), quoting *National Broad. Co., Inc. ("NBC") v. Communications Workers of Am., AFL-CIO*, 860 F.2d 1022, 1026-27 (11th Cir. 1988)) (other citations omitted). It will be shown that the "nexus" or "joint action" test applies to Mr. Cohen's conduct, and to Ms. Cohen's conduct.

#### 2. The Joint Action Test Is Satisfied Here

**IX.** Where "the state has so far insinuated itself into a position of interdependence with the [defendant] that it was a joint participant in the enterprise." *Focus, supra*, at 1267. A court will examine whether the government and the acting party are "intertwined in a symbiotic relationship," as well as whether the relationship involves "the specific conduct of which plaintiff complains." *Id.*

14

66.     Here, Erik Cohen acts as minor's counsel. Cohen is appointed by the Superior Court judge, a government actor, and paid from the funds of Sacramento County, [KIN-GAP] a government entity.  The relationship is symbiotic, because without their relationship with minor's counsel, the government is unable to provide that service, thus unable to demand the corresponding funding from taxpayers. On the other hand, without the relationship with government, the minor's counsel won't get paid.

67.     The relationship between Mr. Cohen and County does involve the specific conduct of which Plaintiffs complain – Mr. Cohen's getting paid by County to issue fraudulent statements to the Court as a false pretext on which to seize children. The relationship between Cynthia Cohen and County also specifically involves the conduct of which Plaintiffs complain – Cynthia provided false allegations upon which to base a Petition for Temporary Guardianship, which enabled Cohen to get appointed, and positioned them both to issue false statements to the Court so as to invoke the power and authority of the Sacramento County Child Abduction Unit, in conformity with the policy and custom of County to allow for such conduct. Also she is paid from the funds of Sacramento County, [KIN-GAP] a government entity.

68.     The U.S. Supreme Court has found that under the "joint action" test a private party can be fairly said to be a state actor where a private party is a "willful participant in joint action with the State or its agents." *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 923, 102 S. Ct. 2744, 2746 (1982) ("*Lugar*").

69.     The present case against Ms. Cohen and Mr. Cohen is legally identical *Lugar*, as the following detailed analogy shows. In *Lugar*, a private actor engaged the County to seize property in satisfaction of an alleged debt, by stating an alleged:

> …belief that the debtor was disposing of or might dispose of his
> property in order to defeat his creditors. Acting upon the petition,
> a clerk of the state court issued a writ of attachment, which was

1
2

> then executed by the county sheriff which effectively sequestered
> the debtor's property...

*Lugar, supra* at 923

3

70.     Here, just like *Lugar*, private actor Ms. Cohen and Erik Cohen engaged the

4

County, including but not necessarily limited to invoking the power and authority

5

of the Sacramento County District Attorney Child Abduction Unit to seize E.F.C

6

from Tahoe Day Care, by falsely stating an alleged belief that Jacqueline Coleman

7

was a danger to E.F.C.

8

71.     When the DCFS Report came back with custody to be retained between the

9

parents, Ms. Cohen and Erik and County faced the prospect that their plan to take

10

E.F.C would collapse. This necessitated the escalation of the scheme to

11

fraudulently claim that Plaintiff Jacqueline Coleman was "on the lam", and

12

"homeless", and that she had been given notice of the November 09, 2016, hearing

13

fraudulent representations one and all.

14

72.     In *Lugar* the private party argued that they were not acting under color of

15

law. But the Supreme Court rejected that argument, finding that a:

16
17
18

> "...private party's joint participation with state officials in the
> seizure of disputed property is sufficient to characterize that party
> as a 'state actor' for purposes of the Fourteenth Amendment."

19

*Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 923, 102 S. Ct. 2744, 2746 (1982)

20
21

73.     Likewise, here Mr. Cohen and Ms. Cohen jointly participated with

22

County in the unwarranted seizure and taking of E.F.C on October 1st, 2016, at

23

Tahoe Day Care. In *Lugar* the State had issued a writ of mandate under a false

24

pretext, just like here, where the State issued a Guardianship under false and

25

fraudulently-obtained pretext. The *Lugar* Court found a sufficient nexus between

26

the private actor's conduct of engaging government officials on the one hand,

27

and the subsequent seizure of property on the other hand, so as to find a "joint

28

action" for Section 1983 purposes.

16

74.    The facts alleged against Mr. Cohen and Ms. Cohen in the present matter are thus *more egregious* than those in *Lugar,* and joint action is more easily found. First, this case involves the destruction of the fundamental right to parent, not merely the destruction of property rights as in *Lugar.* Second, here there are no facts here that even arguably justify the seizure of Evelyn from her parent.

75.    There is more than sufficient nexus between Mr. Cohen and Ms. Cohen's conduct of engaging The Sacramento County Child Abduction Unit via false allegations, fraudulent representations to the court, and the subsequent seizure and taking of E.F.C against the wishes of her parent and temporarily awarding E.F.C to Ms. Cohen, so as to find a "joint action" for Section 1983 purposes.

76.    Moreover, it is worth emphasizing that here, as in *Lugar*, the private actor's conduct engaging government officials worked to the mutual benefit of Mr. Cohen, Ms. Cohen and County. Mr. Cohen got appointed to act as minor's counsel and subsequently was paid for hundreds of hours of "service", and reaching "Level Six" with no ceiling on payment; Ms. Cohen got the child she had always wanted. Ms. Cohen's getting paid by County [KIN-GAP] to issue fraudulent statements to the Court as a false pretext on which to seize children. ; while County receives taxpayer funding (whether Title IV federal funding or otherwise) and justifies an *increase* in funding based on the need to retain Mr. Cohen's services.

77.    Under the "symbiotic relationship" test a private party can be fairly said to be a state actor where "the state has so far insinuated itself into a position of interdependence" with a private party that "it must be recognized as a joint participant in the challenged activity." *Burton v. Wilmington Parking Auth.,* 365 U.S. 715, 725, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961).

78.    Here, the benefits obtained by County, by Mr. Cohen and by Ms. Cohen are indeed interdependent. County derives its funding based on "need", i.e. the

more minor's counsels, the more need. Cohen and Cohen conspire and agree to
issue the false allegations as a false pretext on which to get a temporary
guardianship, because otherwise there is no pretext on which to issue a
Guardianship, receive SSI benefits, avoid family court jurisdiction for minor,
or to appoint a minor's counsel.

79.     Ms. Cohen, a blind woman whom has two emotionally disabled
(self reported from child abuse), adult children living with her, simply desired a
new child to emotionally destroy, E.F.C was in her sights. As Cynthia despises
Jacqueline for taking her son, Erik, away from her and starting a family of their
own. Mr. Cohen, is not an attorney but he acted as appointed counsel for minor,
E.F.C , by not objecting to the granting of guardianship at the secret hearing.
Both Cohen and Cohen are thus an interdependent fit for County's policy and
custom allowing for fraudulent representations to be made as a false pretext on
which to seize children.

80.     County has so far insinuated itself into a position of interdependence with
Erik Cohen and Cynthia Cohen that County's financial goals -cannot be realized
without Mr. Cohen and Ms. Cohen (and others similarly inclined), while Mr.
Cohen's goals of earning big money by fraudulent ARAG reimbursements and
money for the same legal fees from the county and Ms. Cohen's goals of having
a child to use for [KINGAP] money and to emotionally destroy E.F.C , to get
back at Jacqueline, cannot be realized without the conspiratorial cooperation of
the County of Sacramento, including (but not necessarily limited to) the
Sacramento County Child Abduction Unit .

81.     That state action exists when the state has so far insinuated itself into a
position of interdependence with the acting party that it must be recognized as a
joint participant in the challenged activity, which, on that account, cannot be
considered to have been so "purely private" as to fall without the scope of U.S.
Const. amend. XIV. *Krynicky v. Univ. of Pittsburgh,* 742 F.2d 94, 95 (3d Cir.
1984)

18

**3.  Conclusion to De-Facto State Actor**

82.    Therefore, the Court should find that the factual allegations here satisfy the joint action test, such that Mr. Cohen and Ms. Cohen will be considered State Actors for Section 1983 purposes.

**VII.  Procedural Actions by Plaintiff Jacqueline Coleman, with Defendants; County of Sacramento, and Mr. and Ms. Cohen**

83. On July 31, 2023, Plaintiff filed her Motion to Dismiss the original Complaint. [2016-00196445-PR-GP-FRC ]

In that paper,  to the Complaint [2016-00196445-PR-GP-FRC ], " Defendant Cohen … was awarded the minor's permanent guardianship on January 27, 2017 by Co-Defendant Honorable Judge Gervercer.".

On July 21, 2023, Defendant filed her Motion to Amend  the Original Complaint.[2016-00196445-PR-GP-FRC ]

84.  On January 15, 2021 13, 2020, Defendant's filed their Motions to object to the FCS Report. [2016-00196445-PR-GP-FRC ]

85.  On September 15, 2020, Plaintiff filed her Motion to Dismiss the original Complaint. [2016-00196445-PR-GP-FRC ]

[1] It is not entirely clear to Plaintiff when trial in the Guardianship case – as opposed to pre-trial hearings – may have begun.

19

**VIII. CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**
**42 U.S.C. § 1983 – Damages**
**Deprivation of Right to Family Unity Without Due Process**
**(Plaintiff v. County, Cohen, and Cohen in their official capacities)**

86.  Plaintiffs repeat and incorporate by reference the facts alleged above.

87.  According to County's policy and custom to enrich itself by fabricating false pretexts on which to seize children, Defendants acted under color of law to deprive Plaintiffs of the constitutional right to family unity found in the due process clause.

88.  The Fourteenth Amendment provides, in relevant part, that:

> No State...shall...deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

[U.S. Constitution, Amend. XIV]

89.  Regarding the Fourteenth Amendment, and in the context of the fundamental right to parent, U.S. Supreme Court instructs:

> The court has long recognized that the amendment's Due Process Clause, like its U.S. Const. amend. V counterpart, guarantees more than fair process. The Clause also includes a substantive component that provides heightened protection against government interference with certain fundamental rights and liberty interests.

[*Troxel v. Granville*, 530 U.S. 57, 60, 120 S. Ct. 2054, 2057 (2000) ("*Troxel*")]

90.  *Troxel* unambiguously finds the right to parent to be a *fundamental constitutional right*, and explicitly holds that:

> The liberty protected by the Due Process Clause of the United States Constitution includes the right of parents to establish a home and bring up children and to control the education of their own.

[*Troxel, supra,* at 2057]

91.    Along with all other jurisdictions, California Courts have consistently held that notice is a fundamental component of due process. For example:

> Parents are entitled to due process notice of juvenile court proceedings affecting the care and custody of their children and the **absence of due process notice to a parent is a fatal defect** in the juvenile court's jurisdiction.

[*In re Claudia S.*, 131 Cal. App. 4th 236, 237 (2005) ("*Claudia*"), bolding added]

92.    Here, the September 14, 2016,  Order affected the care and custody of Jacqueline and Erik Cohens' minor child, as it awarded guardianship to Defendant Cynthia Cohen. It is undisputed that Jacqueline Coleman was not given notice of the hearing, as the Order states:

> Thrt finds [that] **Notice** of the time and place of hearing **has been dispensed with** for **Jacqueline Coleman (Mother)** for hearing only.

**[EXHIBIT "C"**, p. 45, Item 2, bolding added]

93.    The fact that Erik Cohen had been arrested at her home *3 days prior* to the Temporary Guardianship Order clearly implies that this crucial information was deliberately withheld from the Court, and constitutes fraud upon the court. Committing fraud upon the Court for the purpose of creating a false pretext upon which to seize children is the policy and Custom of County, as executed by Mr. Cohen and Ms. Cohen.

94.    Fraud Upon the Court occurs when the Court relies on deception and the result is a miscarriage of justice. Withholding crucial facts from the Court is a well-recognized form of fraud upon the court. For example, in *Wells v. Zenz*, the Court found that:

> The facts in the case support the conclusion that appellant Nina M. Zenz practiced a fraud upon the court in withholding facts which should have been set forth in her affidavit.

*Wells v. Zenz,* 83 Cal. App. 137, 142 (Dist. Ct. App. 1927)

95.     Here, the Court made a referral to DCFS, and ordered Petitioner to bring the DCFS Report to the November 09, 2016 hearing. It is obvious to understand why the Court made that referral – the  basis however lacks authority to order a referral for a minor  when the court has not obtained subject matter jurisdiction over the issues. Besides, the DCFS investigation was completed, closed and the report issued 5 days *before* the November 09, 2016 hearing for guardianship.

96.     [EXHIBIT"E", p. 53] The Report indicated the father was on felony probation for domestic violence on mother in the presence of their child, ultimately the report exonerated Jacqueline Coleman of kidnapping her daughter E.F.C , just as the SCPD exonerated Jacqueline Coleman after investigating the exact same dubious allegation 2 weeks prior.

97.     According to the policy and custom of County, and in order to perpetrate a false pretext on which to seize E.F.C , Ms. Cohen and Mr. Cohen both failed to bring the DCFS Report to the November 09, 2016. Hearing. This caused the Court to state: "The Court appoints Cynthia Cohen as the Temporary Guardian of the Person of E.F.C and Temporary Letters shall issue". Despite the fact the court NEEDED jurisdiction 5 days prior to the November 09, 2016, hearing for a guardianship.

[EXHIBIT "B", p. 45]

98.     On November 09,2016 , both Ms. Cohen and Mr. Cohen knew that Jacqueline Coleman had been cleared of wrongdoing. But instead of telling the truth, they deliberately concealed that crucial information from the Court, such fraudulent concealment being perfectly in line with the policy and custom of County.

99.     In addition to the fraudulent concealment, Mr. Cohen made intentional misrepresentations of material facts, stating:

DCFS Report was issued, knew that it contained a final custody order from the Juvenile court, and knew that parties were under orders to produce it for the hearing. Thus, when Mr. Cohen said there "are" allegations, he was lying. There "was" an allegation, which allegation had been investigated and closed at the time Mr. Cohen made his statement. Clearly the issue of the allegation is material to the proceeding, it being the  issue upon which the entire guardianship is premised.

100.    Second, Cohen knew that Jacqueline Coleman had not been served, because there was no proof of service filed. Thus, Cohen knew that Jacqueline Coleman was not "on the lam", and was not avoiding the proceedings, as Cohen falsely stated. Mr. Cohen knew that Jacqueline Coleman was not present at the September 14, 2016 hearing for a much more obvious and sinister reason – she had not been served notice.

101.    Jacqueline Coleman would not avoid the proceedings. Jacqueline Coleman is a kind and loving mother who, having been exonerated, had no reason to avoid the proceedings, and every reason to attend them. Clearly the issue of why Jacqueline Coleman  was not present at the September 14, 2016 , hearing is material, for when it is shown that lack of notice is the reason, all basis for the pending  guardianship disappears.

102.    Therefore, the Court must find that Mr. Cohen's statement "there are allegations of kidnapping on the part of the biological mother, who apparently is on the lam  – and avoiding these proceedings" is an intentionally false statement on a material issue made for the purpose of intentionally violating the fundamental right to parent found in the Due Process clause.

103.    Had the Court been made aware that Jacqueline Coleman was cleared of kidnapping in the DCFS Report, it would have made the correct decision – to not issue a permanent guardianship order.

104. Moreover, if she had been served, Jacqueline Coleman would present to the court the NEEDED UCCJEA form re: residency of of a minor, 12/11/2013-03/2016 , which would have have dismissed this case out right for lack of jurisdiction. The only reasonable inference from these facts is that Mr. Cohen and Ms. Cohen made a plan to defraud the Court, and knew that the mothers' appearance at the hearing would spoil the plan to defraud the court.

105. Instead, acting in reliance on the deception, the Court issued the January 25, 2017, Letters of Guardianship order.

106. In considering the allegation that County has a policy and custom to perpetrate fraud as a pretext to seize children, it is worth noting that Mr. Cohen was under the formal supervision of the California Department of Corrections.

107. Thus, County knew of Mr.Cohen's penchant for perpetrating fraud upon the court, approved of him, and paid him many times. The only reasonable inference is therefore that County has a policy and custom to approve of and to pay minor's acting as counsel who are ready, willing and able to perpetrate fraud upon the court as a false pretext to seize children, that serving the financial interest of County

108. (because they can justify increases in funding) and Mr. Cohen (because he gets to "Level Six"), and the personal goals of gaining a child with autism for (Kin-Gap), and SSI benefits, by his mother Cynthia Cohen.

109. Mr.Cohen's moral turpitude is pertinent for another reason: No Court should give any credibility to any statement by Cohen, especially including Cohen's demonstrably false contention that Jacqueline Coleman was "avoiding the proceedings", or that Jacqueline Coleman was "homeless", or anything else that emanates form Mr. Cohen's fraudulent façade. In fact Cohen was arrested once at Jacqueline's home for abuse and violation of a protective order just 3 days before the temporary guardianship.

[EXHIBIT"A", p. 39,]                                          24

110.    County, Mr. Cohen, Ms. Cohen and each of them acted under color of law to deprive Jacqueline Coleman of her constitutional right to family unity.

111.    Therefore, County, Mr. Cohen, Ms. Cohen and each of them are liable to Jacqueline Coleman for violation of Civil Rights.

## SECOND CAUSE OF ACTION

112.    Jurisdiction has not been defined under the Code of Civil Procedure (hereinafter CPC or the Code). Black's Law Dictionary defines the term as "A court's power to decide a case or issue a decree."

113.    If a case has been decided by a court which does not have jurisdiction to decide that matter, such lack of jurisdiction will go back to the root of matter and authority of the court to decide that matter can be challenged.

114.    LACK OF JURISDICTION

1.    When a court does not have jurisdiction to decide a matter in the first place, it is lack of jurisdiction.
2.    So there is no jurisdiction at all.
3.    The decision given in lack of jurisdiction can be declared null.
4.    There cannot be any appeal or revision of such judgment.

115.    IRREGULAR EXERCISE OF JURISDICTION

1.    When the court having jurisdiction exercises its power wrongly, it is an irregular exercise of jurisdiction.
2.    The court has jurisdiction to decide the matter but it merely exercises its power irregularly.
3.    The judgment pronounced by the irregular exercise of jurisdiction is not null because the power to decide includes the power to decide rightly as well as wrongly.

4.    The wrongly decided judgment can be appealed for or can be corrected during revision. Jurisdiction is the power of a court to decide a matter where such power is provided by the statute and cannot be conferred or taken away by mere consent of the parties involved in the suit.

25

116. Major S.S. Khanna v. Brig. F.J. Dillon

In part states:

117.    The declarations made in the plaint by the plaintiff are used to determine the jurisdiction of the court.

118.    Such facts in the plaint that decide jurisdiction of a court are known as jurisdictional facts.

119.    Subject matter jurisdiction can not be consented to by the parties or waived by agreement or stipulation.

120.    Conclusion,  Here an important side note pertains to the petitioner's true author was in fact Erik Cohen, because his mother, Cynthia is legally blind, she would not have been able to read the question (left blank) on the UCCJEA without assistance.

121.    If not for Mr. Cohen's intrinsic fraud upon the court to deprive Jacqueline of her Civil Right to Family , the petition would not have passed the court clerk that faithful day.

122.    If not for Ms. and Mr. Cohen's intentional deception to the court an error in jurisdiction,  ultimately resulted in granting a guardianship over a minor, thus dispensing with parents' fundamental rights would not have occurred on September 14, 2016,  - and not ever.

123.    **[EXHIBIT "A"**, p. 39], Copy of 2015 - Rental Lease for,  3048 53rd Street].

26

124. **THIRD CAUSE OF ACTION**
**42 U.S.C. § 1983 - Damages**
**Conspiracy to Violate Civil Rights**
**(Plaintiff v. County, Cohen, and Cohen in their official capacities)**

125.  Plaintiff repeat and incorporate by reference the facts alleged above.

126.  A conspiracy is an agreement between two or more persons to commit an illegal act.

127.  Acting under color of law, County, Mr. Cohen and Ms. Cohen concocted, agreed upon, and then successfully executed a scheme to defraud Plaintiff and to defraud the Superior Court so as to create a false pretext on which to seize E.F.C and deliver her to Ms. Cohen. Supra. County and Mr. Cohen were monetarily enriched, while Ms. Cohen got the child she had always wanted. Supra.

128.  The conspiratorial scheme executed here was consistent with County's policy and custom, as set forth throughout.

129.  Therefore, County, Mr. Cohen and Ms. Cohen are liable to Plaintiff for Conspiracy to Violate Civil Rights.

27

# FOURTH CAUSE OF ACTION
## 28 U.S.C. § 2201 – Declaratory Judgment
## Facial Challenge to Cal. Probate Code § 2250 (e)(1)
## Void for Vagueness - Due Process
## (Plaintiff v. State of California)

130.   Plaintiff repeat and incorporate by reference the facts alleged above.

131.   California Probate Code § 2250 (e)(1) violates Due Process on its face by allowing a judge to dispense with Notice requirements on a Temporary Guardianship hearing for no stated reason at all. It is also unconstitutionally vague.

132.   California Probate Code provides, in relevant part, that:

> **Unless the court for good cause otherwise orders**, at least five court days before the hearing on the petition [for Temporary Guardianship], **notice** of the hearing **shall** be … personally delivered … to the **parent or parents** of the proposed ward.

Cal. Probate Code § 2250 (e)(1), emphasis added.

133.   As to what may constitute "good cause" to dispense with the notice requirements to parents of a pending petition for Temporary Guardianship, the statute rather cryptically states:

> On or before January 1, 2008, the Judicial Council shall adopt a rule of court that establishes uniform standards for good cause exceptions to the notice required by subdivision (e), limiting those exceptions to only cases when **waiver of the notice is essential to protect** the proposed conservatee or **ward**, or the estate of the proposed conservatee or ward, from **substantial harm**.

Cal. Probate Code §2250 (k), bolding added

134.   As Plaintiff read the statute, it does not presently guarantee that waiver of notice is limited to the prevention of substantial harm, only that the Judicial Council was instructed to adopt a rule of court to that effect by 2008.

135.   If the Judicial Council ever did adopt such a rule as contemplated in §2250 (k), it certainly isn't reflected in the Judicial Council GC-140 form utilized in the Cohen case, which cites §2250,

28

about what might or might not constitute "good cause" for waiving the notice requirements. Instead, the form as filled out by Judge Gervercer on September 14, 2016 reads, in relevant part:

COURT - Notice dispensed for hearing - mother [Jacqueline Coleman]. **[EXHIBIT "C"]** p.41

136.    Thus, the Judicial Council did not adopt a rule of court that establishes uniform standards for good cause exceptions to the notice required, and did not limit those exceptions to only cases when waiver of the notice is essential to protect the proposed ward from substantial harm.

137.    There certainly was no risk of substantial harm to E.F.C on , September 14, 2016 , as her kind and loving mother Jacqueline Coleman had obtained a 5 year CPO, protecting herself and E.F.C against the father 3 months prior to the hearing.  Supra.

138.    Judge Gervercer did not state any "good cause" for "dispensing with" the notice requirements.

139.    The issue of Notice was challenged to the trial Court in January  2021 with a Motion to Set Aside the Order of Temporary Guardianship. Although the

140.    Honorable Calvin Culhan heard the motion, he essentially declined to consider the matter, stating:

It is surely true that Judge Gervercer  found "good cause" to "dispense with" one parents' right to Notice, as evidenced by nothing less and nothing more than the check box on the GC-140 form.

141.    The constitutional problem is that the statute and the Judicial Council form do not require anything besides a check mark on a form. There is no requirement

29

1 for a finding that the proposed ward (here, E.F.C ) is at risk of substantial
2 harm. There is no standard for "good cause" *at all.*

3 142.    The U.S. Supreme Court has explained what will invalidate a law for vagueness:

4 [V]    agueness may invalidate a law for either of two independent reasons. First, it may fail to

5

6 provide the kind of notice that will enable ordinary people to understand what conduct it prohibits.

7 Second, it may authorize and encourage arbitrary and discriminatory enforcement.

8 143.    Clearly, Cal. Probate Code § 2250 (e)(1) fails to provide the kind of notice that will allow

9 ordinary people to understand what judicial conduct it prohibits. All that is necessary is for a judge

10 to check off a check box, and that constitutes "good cause" to "dispense with" both parents right to

11

12 be notified that their child is about to be taken and given to someone else. This authorizes arbitrary

13 and discriminatory enforcement, as occurred in the case of Jacqueline and Evelyn Coleman, for

14 example.

15 144.    Thus, under either or both of the tests articulated in City of Chicago v. Morales, supra, the

16 Court should issue a Declaratory Judgment and opinion that California Probate Code § 2250 (e)(1)

17

18 is unconstitutionally void for vagueness on its face, and that it violates substantive Due Process.

19     *City of Chicago v. Morales,* 527 U.S. 41, at 56 (1999), and see also *Johnson v.*
    *United States*, (2015) 135 S.Ct. 2551 (striking a severable portion of a criminal

20    statute for vagueness); and *Sessions v. Dimaya*, (2018) 138 S.Ct. (striking a
    severable portion of a civil statute for vagueness).

21

22                          **FIFTH CAUSE OF ACTION**
                      **28 U.S.C. § 2201 – Declaratory Judgment**

23          **As-Applied Challenge to Cal. Probate Code § 2250 - Due**

24                   **Process (Plaintiff v. State of California)**

25

26 145.    Plaintiff repeat and incorporate by reference the facts alleged above.

27 146.    Parenting is a fundamental constitutional right. Supra.

28

                                          30

147.    By not requiring Notice to parents, Cal. Prob. Code § 2250 (e)(1) violates Due Process on its face. Supra. Assuming for sake of discussion that "good cause" to do away with the Notice requirements is sufficiently defined on the face of the Statute, it certainly was applied to Jacqueline Coleman in a manner that deprived her of her Due Process rights.

148.    On September 14, 2016 a secret Temporary Guardianship hearing took place, at which an Order was made allowing 3-yeard old E.F.C to be seized from her mother, and taken away from her kind and loving, biological family, whom CPS filed a report before the unlawful seizure.

149.    The "good cause" to "dispense with" Notice and conduct a top secret, unnoticed Temporary Guardianship hearing was nothing more than a check-box on a court form. No further explanation was given for doing away with Notice.

150.    Therefore, the Court should issue a Declaratory Judgment and opinion that California Probate Code § 2250 (e)(1) unconstitutionally violated substantive and/or procedural Due Process as applied to Jacqueline Coleman.

## SIXTH CAUSE OF ACTION
### Intentional Infliction of Emotional Distress - Damages
### (Plaintiff v. Cohen and Cohen in their individual capacities)

151.    Plaintiff repeat and incorporate by reference the facts alleged above.

152.    Mr. Cohen and Ms. Cohen fabricated a false and fraudulent pretext to seize a minor child away from her kind and loving, legal, and biological parent. This is extreme and outrageous.

153.    The seizure and taking custody of Evelyn was intended to cause Jacqueline Coleman emotional distress. At minimum, Mr. Cohen and Ms. Cohen acted with reckless disregard of the probability that Jacqueline Coleman would suffer emotional distress.

# SEVENTH CAUSE OF ACTION
## Negligent Infliction of Emotional Distress - Damages
### (Plaintiff v. Cohen and Cohen in their individual capacities)

154.    Mr. Cohen and Ms. Cohen know that Jacqueline Coleman must be present in her own home without E.F.C , and that this causes intense emotional distress every day that **she must live like this.**

**155.**    Jacqueline Coleman do indeed suffered severe emotional distress  over the theft of her child, including fear, anger, mortification, shock, humiliation, worry, anguish, grief  and dread.

**156.**    Ms. Cohen's conduct was a substantial factor in causing  Jacqueline Coleman to suffer severe emotional distress. Likewise, Mr. Cohen's conduct was a  substantial factor in causing Jacqueline Coleman to suffer severe emotional distress.

**157.**    Therefore, Mr. Cohen and Ms. Cohen are jointly and severally liable to Plaintiff  for Intentional Infliction of Emotional Distress.

**158.**    Therefore, Mr. Cohen and Ms. Cohen  are jointly and severally liable to Plaintiff  for Intentional Infliction of Emotional Distress. Plaintiff repeat and incorporate by reference the facts alleged above.

**159.**    Mr. Cohen and Ms. Cohen each owed Jacqueline Coleman a duty to act as a reasonable person regarding custody of E.F.C .

**160.**    Mr. Cohen and Ms. Cohen breached their duty when they fabricated a false and fraudulent  pretext to seize and take custody of a minor child away from her kind and loving parent.

**161.**    The seizure and taking custody of Evelyn was the actual and proximate cause of the serious emotional distress now suffered by Jacqueline Coleman which serious emotional distress includes fear, anger, mortification, shock, humiliation, worry, anguish, grief and dread.

**162.**    Ms. Cohen's conduct was a substantial factor in causing Jacqueline Coleman  to suffer serious emotional distress. Likewise, Mr. Cohen.

## SEVENTH CAUSE OF ACTION
### Negligent Infliction of Emotional Distress - Damages
### (Plaintiff v. Cohen and Cohen in their individual capacities)

conduct was a substantial factor in causing Jacqueline Coleman to suffer serious emotional distress.

163.   Therefore, Mr. Cohen and Ms. Cohen are jointly and severally liable to Plaintiff for Negligent Infliction of Emotional Distress.

## IX.   PRAYER FOR RELIEF

Wherefore, Plaintiffs pray for relief as follows:

**General Damages** – for pain and suffering in an amount found reasonable, but not less than $1,000,000;

**Actual Damages** – for medical and other expenses caused by Defendants' conduct, in an amount to be proven at trial, but not less than $200,000;

**Punitive Damages** – as allowed by statute, to punish Defendants, make examples of them, and to deter future such conduct, in an amount sufficient to accomplish the purpose of punitive damages, in light of the net worth of Defendants, such amounts to be proven at trial;

**Declaratory Judgment** – that Cal. Probate Code § 2250 (e)(1) is unconstitutionally void for vagueness on its face, or alternatively, that Cal. Probate Code § 2250 (e)(1) is unconstitutional as applied to Plaintiffs, for the statute as presently written allows conducting a Temporary Guardianship hearing without Notice to the parents, and without good cause to avoid notice;

**Permanent Injunction** – prohibiting the State of California from conducting a Temporary Guardianship hearing without Notice to parents or without good cause to avoid notice;

**Costs and Fees** – as incurred in prosecuting this action, including reasonable attorney fees as allowed by statute;

Any other such relief as is appropriate.

33

1
2
3
4   Plaintiffs demand a trial by jury on all issues so-triable.
5
6
7
8   **X.    DEMAND FOR JURY TRIAL**
9
10
11
12                              Respectfully submitted on November 09, 2023
13
14
15                              $\mathcal{QC}$
16   _____
                                Jacqueline Coleman
17
18
19
20
21
22
23
24
25
26
27
28

1

2

3

## XI.    **VERIFICATION OF Jacqueline Coleman**

4

5

6

7

8

9

10

I, the undersigned Plaintiff, is the parent of Evelyn Faith Cohen. I have made a thorough review of all the factual allegations stated in the above complaint. These facts are within my personal knowledge, and I attest to the accuracy thereof. As to those facts alleged on information and belief, I believe those things to be true, as reasonable inferences from the facts which are within my personal knowledge. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

11

12

Respectfully submitted on November 09,2023

13

14

15

Jacqueline Coleman

16

17

18

19

20

21

22

23

24

25

26

27

28

35

JACQUELINE COLEMAN,

# UNITED STATES DISTRICT COURT

v.

## EASTERN   DISTRICT OF   CALIFORNIA

COUNTY OF SACRAMENTO; ERIK COHEN, in his
individual and de-facto official capacity; CYNTHIA
COHEN, in her individual and de-facto official
capacity; STATE OF CALIFORNIA; and DOES 1-10,

## EXHIBIT AND WITNESS LIST

Case Number:

| PRESIDING JUDGE | | | | | PLAINTIFF'S ATTORNEY<br>In Pro Per | DEFENDANT'S ATTORNEY<br>Kim Harrison |
|---|---|---|---|---|---|---|
| TRIAL DATE (S) | | | | | COURT REPORTER | COURTROOM DEPUTY |
| PLF.<br>NO. | DEF.<br>NO. | DATE<br>OFFERED | MARKED | ADMITTED | DESCRIPTION OF EXHIBITS* AND WITNESSES | |
| p.39 | | 11/09/23 | E-A<br>1-3 | | **[EXHIBIT "A*"],** Rental Lease | |
| p. 43 | | 11/09/23 | E-B<br>1 | | **[EXHIBIT "B*"],** Probate Notes 09/14/2016 | |
| p. 45 | | 11/09/23 | E-C<br>1 | | **[EXHIBIT "C"],** Probate Order 09/14/2016 | |
| p. 47 | | 11/09/23 | E-D<br>1-5 | | **[EXHIBIT "D"],** Probate Order 01/15/2021 | |
| p.53 | | 11/09/23 | E-E<br>1 | | **[EXHIBIT "E"],** Redacted DFS Report and Child Custody Order | |
| | | | | | **[EXHIBIT "F"],** Criminal Protective Order | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

\* Include a notation as to the location of any exhibit not held with the case file or not available because of size.

Page of 37 Pages

37 of 55

# [EXHIBIT] "A"

**SUPERIOR COURT OF CALIFORNIA,**

COUNTY OF SACRAMENTO

WILLIAM R RIDGEWAY FAMILY RELATIONS COURTHOUSE

PROBATE NOTES - September 14, 2016

Event Date: 11/09/2016          Event Time: 11:00:00 AM          Dept: 129

Judicial Officer:

Case Title: In the Matter of Cohen          Case No: 34-2016-00196445-PR-GP-FRC

Case Category: Probate          Case Type: Guardianship Of Person Only

Event Type:  Petition for Hearing - Guardianship Probate

Moving Party: Cynthia M Cohen

Causal Document & Date Filed : Petition for Appointment of Guardian of Minor(s),  06/24/2016

PETN FOR APPOINTMENT OF GUARDIAN OF THE PERSON

Minor:  Evelyn Cohen
DOB   12/11/2013

PETNR Cynthia Cohen  Paternal grandmother

FILED    PCI rpt   REC: grant
WAIVED Assessment of $800 Filing fee waiver granted

NEEDED Notice of hearing with proof of personal service, judicial council form GC-020 or diligence search, local form LP-010 regarding efforts to identify and or locate for service of copy o petn at least 15 days prior to the date for hearing:

Father:  Erik Cohen
Mother   Jacqueline Coleman

NEEDED Notice of hearing with proof of mail service, judicial council form GC-020 or diligence search, local form LP-010 regarding efforts to identify and or locate for service of copy o petn at least 15 days prior to the date for hearing:

Maternal grandparents    Not listed
Siblings                          See PCI rpt

NEEDED    UCCJEA form re: residency of minor from 12/11/2013 to 3/2016

Event ID:  2189043          PROBATE NOTES          Calendar No.: 8
                                         Page: 1

# [EXHIBIT] "B"

**E-B 1**

## SUPERIOR COURT OF CALIFORNIA,
## COUNTY OF SACRAMENTO
### WILLIAM R RIDGEWAY FAMILY RELATIONS COURTHOUSE

### MINUTE ORDER

DATE: 09/14/2016                    TIME: 11:00:00 AM        DEPT:  129

JUDICIAL OFFICER PRESIDING: Steven M Gevercer
CLERK:  L. Cox
REPORTER/ERM:
BAILIFF/COURT ATTENDANT: E. Reed

CASE NO: **34-2016-00196445-PR-GP-FRC** CASE INIT.DATE: 06/24/2016
CASE TITLE: **In the Matter of Cohen**
CASE CATEGORY: Probate

EVENT ID/DOCUMENT ID: ,13802609

**EVENT TYPE**: Petition for Hearing - Guardianship Probate
MOVING PARTY: Cynthia M Cohen
CAUSAL DOCUMENT/DATE FILED: Petition for Appointment of Guardian of Minor(s), 06/24/2016

**APPEARANCES**
Cynthia M Cohen, self represented Petitioner, present.
Erik Cohen

Petition for Hearing - Guardianship Probate continued to 11/09/2016 at 11:00 in this department.

The Court appoints Cynthia Cohen as the Temporary Guardian of the Person of Evelyn Cohen and Temporary Letters shall issue.

The Court notes the Father, Erik Cohen, has no objection to the granting of the guardianship.

Hearing is continued for proof of service on Mother, Jacqueline Coleman, of the Petition and Notice of Hearing for the November 9, 2016 hearing date.

# [EXHIBIT] "C"

**E-C
1**

# SUPERIOR COURT OF CALIFORNIA,
## COUNTY OF SACRAMENTO
### WILLIAM R RIDGEWAY FAMILY RELATIONS COURTHOUSE

## MINUTE ORDER

DATE: 01/15/2021                    TIME: 09:00:00 AM        DEPT: 129

JUDICIAL OFFICER PRESIDING: Kevin Culhane
CLERK: J. Keen
REPORTER/ERM:
BAILIFF/COURT ATTENDANT:

CASE NO: **34-2016-00196445-PR-GP-FRC** CASE INIT.DATE: 06/24/2016
CASE TITLE: **In the Matter of Cohen**
CASE CATEGORY: Probate

---

EVENT ID/DOCUMENT ID: ,18797191

**EVENT TYPE**: Petition for Hearing - Guardianship Probate
MOVING PARTY: Jacqueline Coleman
CAUSAL DOCUMENT/DATE FILED: Petition for Termination of Guardianship, 09/11/2020

---

**APPEARANCES**
Cynthia M Cohen, self represented Petitioner, appeared remotely via video.
Susan C Hill, counsel, present for Minor(s) remotely via video.
Jacqueline Coleman, self represented Objector, appeared remotely via video.
 Shawn Evan, Attorney for the Guardian, appeared remotely via video
Erik Cohen, the Father, appeared remotely via video
Shelly O'Brian, Attorney making a special appearance for the Petitioner, appeared remotely via video

The Investigation Report was read and considered by the Court.

Petition for Hearing - Guardianship Probate continued to 02/26/2021 at 09:00 in this department.

Parties request a continuance as the Mother and Father have a Domestic Violence Hearing and custody hearing coming up in their Family Law case (17L02710) January 26, 2021.

---

# [EXHIBIT] "D"

E-D
1

## Lease

LANDLORD: "James" Xiaoyan Fang                    TENANT: Erik Mkhael Cohen

Jacqueline Star Cohen

PROPERTY: 3048 53rd St, Sacramento, CA 95820

IN CONSIDERATION of the mutual covenants and agreements herein contained, Landlord hereby leases to Tenant and Tenant hereby leases from Landlord the above-described property under the following terms:

1. TERM. This lease shall be for a term of two year beginning Dec 16th, 2013 and ending Dec 14th, 2015. If Tenant is in possession of the unit for one year or more, a sixty-day notice to vacate will be served by Landlord. Additional rent shall be charged on a daily basis if Tenant holds over, prorated as 1/30th of the monthly rent at that time, using a thirty-day month for proration.

2. RENT. The rent shall be $1450 per month and shall be due on or before the first day of each month. If rent is received more than three days late, a late charge of $5/day shall be paid.

3. PAYMENT. Payment must be received by Landlord on or before the due date at the following address: 1218 Funston Ave, San Francisco CA 94122 or such place as designated by Landlord in writing. Tenant understands that this may require early mailing. If a check bounces, Tenant agrees to pay a late charge of $30, and Landlord may require future payments in cash, money order, or certified funds. Tenant is hereby notified that default of financial obligations under this agreement may be reported to credit reporting companies and may result in derogatory information on Tenant's credit report. Payment in person may be made on ☐Monday ☐Tuesday ☐Wednesday ☐Thursday ☐Friday ☐Saturday ☐Sunday between the hours of _____(am) and _____(pm). Acceptable methods of payment are: ☐cash ☐personal check ☐cashier's check ☐money order ☐ credit (contact owner or agent to arrange).

4. DEFAULT. In the event Tenant defaults under any terms of this agreement, Landlord may recover possession as provided by law and seek monetary damages.

5. SECURITY. Landlord acknowledges receipt of the sum of $1500 as security deposit. This deposit may not be used as last month's rent. Landlord may withhold from the security deposit amounts necessary to cover unpaid rent, damages to the premises and/or Landlord's personal property caused by Tenant beyond ordinary wear and tear, and cleaning of the premises, if necessary.

Within three weeks after Landlord retakes possession of the premises, Landlord shall furnish Tenant with a written statement itemizing the amounts withheld with explanation and returning any unused portion of the deposit to Tenant.

6. UTILITIES. Tenant agrees to pay all utility charges on the property except: water, sewage and garbage.

7. MAINTENANCE. Tenant has examined the premises and has found them to be clean, safe, and in good repair and condition with the exception of the following: See the check in and check out list.

Tenant agrees to return the premises to Landlord at the termination of the tenancy in the same clean, safe, good repair and condition, except for normal wear and tear.

8. LOCKS. If Tenant adds or changes locks on the premises, Landlord shall be given copies of the keys. Landlord shall at all times have keys for access to the premises in case of emergencies.



9. ASSIGNMENTS AND SUBLETTING. Tenant may not sublet the premises nor any portion of the premises, nor may Tenant assign this agreement without written permission of Landlord.

10. USE. Tenant shall not use the premises for any illegal purpose or any purpose that will increase the rate of insurance, and shall not cause a nuisance for Landlord or neighbors. Tenant shall not create any environmental hazards on the premises.

11.1 LAWN (CHECK AND INITIAL): Tenant agrees to maintain the lawn and other landscaping on the premises at Tenant's expense.    Yes_____    No_____Initials _____(Lawn Service is not included in the rent)

11.2 Alarm system (CHECK AND INITIAL): Tenant agrees to install and maintain the alarm system on the premises at Tenant's expense.    Yes_____    No_____Initials _____

12. LIABILITY. Tenant shall be responsible for insurance on Tenant's own property and agrees not to hold Landlord liable for any damages to Tenant's property on the premises.

13. ACCESS. Landlord may enter the premises as allowed by Section 1954 of the California Civil Code. Refusal by the tenant to allow entry as permitted by the code will breach this contract and may result in eviction. The word "Landlord" includes owner(s), owner's agent(s), and employee(s).

14. PETS. No pets shall be allowed on the premises except: _____
_____.

15. WATERBEDS. No waterbeds or liquid-filled furniture shall be allowed on the premises without Landlord's written permission.

16. OCCUPANCY. The premises shall be occupied as a residence only, and shall be occupied only by the following persons: (List all occupants, both adults and minors) _____
_____.

17. TENANT'S APPLIANCES. Tenant agrees not to use any heaters, fixtures, or appliances drawing excessive current without consent of Landlord.

18. PARKING. Tenant agrees that no parking is allowed on the premises except: _____. No boats, recreation vehicles, or disassembled automobiles may be stored on the premises.

19. FURNISHINGS. Any articles provided to Tenant and listed on attached schedule are to be returned in good condition at the termination of this agreement.

20. ALTERATIONS AND IMPROVEMENTS. Tenant shall make no alterations to the property without the written consent of Landlord, and any such alterations or improvements shall become the property of Landlord.

21. SMOKE DETECTORS. Tenant shall be responsible for keeping smoke detectors operational and for changing batteries when needed.

22. LIENS. The estate of Landlord shall not be subject to any liens for improvements contracted by Tenant.

23. HARASSMENT. Tenant shall not do any acts to intentionally harass Landlord or other tenants.

24. ATTORNEY'S FEES. In the event of legal action, the prevailing party (shall) (shall not) recover reasonable attorney's fees in addition to any other recovery.

25. SEVERABILITY. In the event any section of this agreement shall be held to be invalid, all remaining provisions shall remain in full force and effect.

26. RECORDING. This agreement shall not be recorded in any public records.

27. WAIVER. Any failure by Landlord to exercise any rights under this agreement



shall not constitute a waiver of Landlord's rights.

28. SUBORDINATION. Tenant's interest in the premises shall be subordinate to any encumbrances now or hereafter placed on the premises, to any advances made under such encumbrances, and to any extensions or renewals thereof. Tenant agrees to sign any documents indicating such subordination which may be required by lenders.

29. ATTACHMENTS: The following attachments are incorporated and made a part of this agreement. (Tenant should initial)

A. _____     B. _____

C. _____     D. _____

30. ENTIRE AGREEMENT. This rental agreement, including the above initialed attachments, constitutes the entire agreement between the parties and may not be modified except in writing signed by all parties.

31. OWNER OR MANAGER. The owner or manager for service of legal notices is: _____.

32. NOTICE: The California Department of Justice, sheriff's departments, police departments serving jurisdictions of 200,000 or more, and many other local law enforcement authorities maintain for public access a database of the locations of persons required to register pursuant to paragraph (1) of subdivision (a) of Section 290.4 of the Penal Code. The data base is updated on a quarterly basis and is a source of information about the presence of these individuals in any neighborhood. The Department of Justice also maintains a Sex Offender Identification Line through which inquiries about individuals may be made. This is a "900" telephone service. Callers must have specific information about individuals they are checking. Information regarding neighborhoods is not available through the "900" telephone service.


33. WITNESS the hands and seals of the parties hereto as of this

departments serving jurisdictions of 200,000 or more, and many other local law enforcement authorities maintain for public access a database of the locations of persons required to register pursuant to paragraph (1) of subdivision (a) of Section 290.4 of the Penal Code. The data base is updated on a quarterly basis and is a source of information about the presence of these individuals in any neighborhood. The Department of Justice also maintains a Sex Offender Identification Line through which inquiries about individuals may be made. This is a "900" telephone service. Callers must have specific information about individuals they are checking. Information regarding neighborhoods is not available through the "900" telephone service.

WITNESS the hands and seals of the parties hereto as of this            day of October 15, 2015¦

LANDLORD:                          TENANT:

_____            _____
James Fang                         JC

_____            _____

# [EXHIBIT] "E"




**1**



# Superior Court of California
## County of Sacramento
### Sitting as the Juvenile Court

Date: 02/28/14 08:30                 Docket No. 14328485                 135

In RE:        Evelyn Cohen
A Minor Born: 12/11/2013
AGE           2 mos
Court No.:    234276
Xref No.      4917048

PRESENT:
Referee: Natalie S. Lindsey
Reporter: Katherine Van Grinsven
Clerk: Ed Bernardo
Bailiff: Present

PRESENT BEFORE THE COURT:
Jacqueline Cohen , Mother
Eric Cohen , Father
Nicole Rouse, Children's Law Center of Sacramento (CLCSAC 1) for Minor, Evelyn Cohen
Carol Pulido, Deputy County Counsel (DCC) for Department of Health and Human Services (DHHS)
Russ Hopkins, Court Officer for DHHS
Wraymond Plummer, Private Counsel for Father, Eric Cohen
Wraymond Plummer, Private Counsel for Mother, Jacqueline Cohen

PROCEEDING: PRE JURISDICTIONAL STATUS CONFERENCE HEARING [WIC §§355/358]

Notice having been duly served, the original 300 WIC petitions filed on 01/24/2014 reading waived by counsel. The Court explains the nature of proceedings and possible consequences of admitting the allegations of petitions, including removal of the child from care and custody of parent. Court informs parties of constitutional rights, including right to counsel.

The Court has read and considered the petitions, the jurisdiction/disposition report, and the addendums filed by DHHS.

Waiver and Plea form as to the mother and the father are accepted and ordered filed by the Court. The Court finds that the mother and the father have made a knowing, intelligent and voluntary waiver of rights.

By stipulation, the matter is submitted on the basis of the social study report, which the Court read and considered.

THE COURT FINDS:

The birth date of Evelyn Cohen is 12/11/2013 as on the petition.

The child is a resident of Sacramento County.

The Court finds true by preponderance of evidence and sustains allegations as to child Evelyn Cohen (b-1)(b-2); of the original 300 WIC petition(s) filed 01/24/14.

The child is described by 300 (b) WIC.

Page 1 Of **5**

DISPOSITION PROCEEDINGS:

Parties are proposing a resolution of setting a WIC 360(b) hearing with continued services for parents. If after six months the parents are compliant with their case plan the petitions will be dismissed.

All counsel stipulate to setting a WIC 360(b) hearing with continued services for the parents.

THE COURT ORDERS:

The attached findings and orders are hereby incorporated herein by reference and made a part of this minute order.

The WIC 360 (b) hearing is set for 08/15/14 at 8:30 a.m. in Dept 135, 3341 Power Inn Road, Sacramento, CA 95826.

The mother and the father shall appear for the 08/15/14 court date.

_____, Court Clerk
E. Bernardo

NOTICE: At any time prior to the expiration of ten (10) days after service of a written copy of the order and findings of a Referee, a child or his/her parent or guardian may apply to the Presiding Judge of the Juvenile Court for a rehearing by complying with Local Rule of Court 7.26. Other relatives and de facto parents do not have a right to apply for a rehearing. If the child, parent or guardian is represented by counsel, the application must be filed by counsel.

In RE: Cohen
Ct No: 234276

Minute Order
Date: 02/28/2014

1  Evelyn Cohen                                                                        234276

FINDINGS:

**Jurisdiction**

5       The Court has read and considered and admits into evidence the report prepared for
        this hearing and filed by the Department of Health and Human Services in this matter;

6  The Court finds based upon the foregoing and all other evidence received:

7       Notice of the date, time and location of the hearing was given to all parties as required
8       by law;

9       The child, EVELYN COHEN, is not an Indian child;

10      The child's county of residence is: Sacramento County;

11      The child's date of birth is: December 11, 2013;

12      These are the names and addresses of all the known presumed and alleged fathers and
        their children:
13

14  Name: Erik Cohen
    Relationship:  presumed father
15  Child:  EVELYN COHEN
    Child's DOB: December 11,
16  2013

17
        By a preponderance of the evidence, the allegations set forth in the petition as
18      originally filed or as amended are true;

19

20

21

22

23

24

25

26

27

28

Jurisdiction/Disposition Report
02/28/2014

**E-E**

**3**

1   Evelyn Cohen                                                                    234276

2   THE COURT ORDERS:

3         ☒      The petition is sustained under, and the child, EVELYN COHEN, is a person
4                described by, Welfare and Institutions Code § (specify all that apply):

                 ☒    300(b)
5

6   **FINDINGS:**

7   ☒    The Court has read and considered the assessment report prepared for this hearing and filed
         by the Department of Health and Human Services in this matter;
8

9   The Court finds:

10  ☒    All necessary parties have been properly noticed of the hearing;

11  ☒    The child, EVELYN COHEN, is a person described by Welfare and Institutions Code section
         300;

12       The return of the child, EVELYN COHEN to the physical custody of the parents, Jacqueline
13       Cohen and Erik Cohen, would not create a substantial risk of detriment to the safety,
         protection, or physical or emotional well-being of the child;
14

15  ☒    Reasonable efforts were made to prevent or eliminate the need for removal for the home;

16  ☒    The agency (Department of Health and Human Services) has complied with the case plan by
         making reasonable efforts to make it possible for the child, EVELYN COHEN to safely return
17       home and to complete whatever steps are necessary to finalize the permanent placement of the
         child;
18

         The foregoing findings are based on the following facts:

19       1.   The child, EVELYN COHEN, date of birth, December 11, 2013, is at

20

21

22

23

24

25

26

27

28

                              Jurisdiction/Disposition Report
                                      02/28/2014

**E-E**

1 | Evelyn Cohen                                                **4**                   234276

2 | **THE COURT ORDERS:**

3 | ☒   The parents, Jacqueline Cohen and Erik Cohen, retain custody of the child, EVELYN
4 |     COHEN. The child is placed under the supervision of the Department of Health and Human
    Services for a minimum of six months.  The Department of Health and Human Services is
5 |     ordered to provide services designed to keep the family together as provided in the attached
    case plan.

6 |
7 | ☒   The parents, Jacqueline Cohen and Erik Cohen, comply with the case plan(s) attached to the
    social worker's report prepared for this hearing, as approved by the Court, with any
8 |     modifications ordered by the Court.  The Department of Health and Human Services shall
    provide the parent(s) with a copy of the case plan(s), including any Court ordered
9 |     modifications;

10 | ☒   A hearing pursuant to _____ **360(b)** _____ is hereby calendared.

11 |

12 |

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

Jurisdiction/Disposition Report
02/28/2014

5 -- 5

# [EXHIBIT] "F"

CR-160

**FOR COURT USE ONLY**

SUPERIOR COURT OF CALIFORNIA, COUNTY OF _Sacramento_  **E-F**
STREET ADDRESS: _720 9th Street_
MAILING ADDRESS:
CITY AND ZIP CODE: _Sacramento, CA 95814_
BRANCH NAME:

**LED/ENDORSED**

JUN 21 2016

By D. Ricketts, Deputy Clerk

PEOPLE OF THE STATE OF CALIFORNIA
VS.                              X: 3714090
DEFENDANT: _Erik Cohen_

**CRIMINAL PROTECTIVE ORDER—DOMESTIC VIOLENCE**
(CLETS - CPO) (Pen. Code, §§ 136.2, 1203.097(a)(2),
136.2(i)(1), 273.5(j), and 646.9(k))

☒ ORDER UNDER PENAL CODE, § 136.2      ☐ MODIFICATION
☐ PROBATION CONDITION ORDER (Pen. Code, § 1203.097)

CASE NUMBER:

ORDER UNDER:
☐ PENAL CODE, § 136.2(i)(1) ☐ PENAL CODE, § 273.5(j) ☐ PENAL CODE, § 646.9(k)

**CASE NUMBER:** _16FE005083_

**This Order May Take Precedence Over Other Conflicting Orders; See Item 4 on Page 2.**

1. PERSON TO BE RESTRAINED *(complete name):* _Erik Cohen_                 _2/21/14_
   Sex: ☒ M  ☐ F  Ht: _5'5_  Wt: _145_ Hair color: _BLK_  Eye color _BRO_ Race: _W_  Age:     Date of birth: _XX/XX/XX_

   by this judicial officer order expires _04/21/21_  If no date is listed, this order expires     Room:     in Dept.: _40_

2.     three years from date of issuance at *(time):* _1:30_

3. ☒ Defendant was personally served with a copy of this order at the court hearing, and no additional proof of service of this order is required.

4. FULL NAME, AGE, AND GENDER OF EACH PROTECTED PERSON: _Jacqueline Star Coleman_
   _(f, 5/28/76)_

5. ☐ For good cause shown, the court grants the protected persons named above the exclusive care, possession, and control of the following animals:

6. ☐ The court has information that the defendant owns or has a firearm or ammunition, or both.

GOOD CAUSE APPEARING, THE COURT ORDERS THAT THE ABOVE-NAMED DEFENDANT

7.     must not harass, strike, threaten, assault (sexually or otherwise), follow, stalk, molest, destroy or damage personal or real property, disturb the peace, keep under surveillance, or block movements of the protected persons named above.

8.     must not own, possess, buy or try to buy, receive or try to receive, or otherwise obtain a firearm or ammunition. The defendant must surrender to local law enforcement, or sell to or store with a licensed gun dealer any firearm owned by the defendant or subject to his or her immediate possession or control within 24 hours after service of this order and must file a receipt with the court showing compliance with this order within 48 hours of receiving this order.

   ☐ The court finds good cause to believe that the defendant has a firearm in his or her immediate possession or control and sets a review hearing for *(date):*                              to ascertain whether the defendant has complied with the firearm relinquishment requirements of Code Civ. Proc., § 527.9. (Cal. Rules of Court, rule 4.700.)

   ☐ The court has made the necessary findings and applies the firearm relinquishment exemption under Code Civ. Proc., § 527.9(f). The defendant is not required to relinquish this firearm *(specify make, model, and serial number of firearm):*

9.     must not attempt to or actually prevent or actually dissuade any victim or witness from attending a hearing or testifying or making a report to any law enforcement agency or person.

10.     must take no action to obtain the addresses or locations of protected persons or their family members, caretakers, or guardian unless good cause exists otherwise. ☐ The court finds good cause not to make the order in item 10.

11. ☐ must be placed on electronic monitoring for *(specify length of time):*                         . (Not to exceed 1 year from the date of this order. Pen. Code, § 136.2(a)(7)(D) and Pen. Code, § 136.2(i)(2).)

12. ☒ must have no personal, electronic, telephonic, or written contact with the protected persons named above.

13. ☒ must have no contact with the protected persons named above through a third party, except an attorney of record.

14. ☒ must not come within _100_ yards of the protected persons and animals named above.

15. ☐ must not take, transfer, sell, encumber, conceal, molest, attack, strike, threaten, harm, or otherwise dispose of the animals described in item 5.

16. ☒ may have peaceful contact with the protected persons named above, as an exception to the "no-contact" or "stay-away" provision in item 12, 13, or 14 of this order, only for the safe exchange of children and court-ordered visitation as stated in:
    a. ☐ the Family, Juvenile, or Probate court order in case number:               issued on *(date):*
    b. ☒ any Family, Juvenile, or Probate court order issued *after the date* this order is signed.

17. ☒ The protected persons may record any prohibited communications made by the restrained person.

18. ☒ Other orders including stay-away orders from specific locations: _Home, Work, School_

Executed on: _6/21/16_
*(DATE)*                           *(SIGNATURE OF JUDICIAL OFFICER)*                    Department/Division:

Form Adopted for Mandatory Use
Judicial Council of California
CR-160 [Rev. July 1, 2014]
Approved by Department of Justice

**CRIMINAL PROTECTIVE ORDER—DOMESTIC VIOLENCE**
**(CLETS - CPO)**

Penal Code, §§ 136.2, 166, 1203.097(a)(2),
273.5(j), 646.900, and 136.2(i)(1)
www.courts.ca.gov

BUNMI O. AWONIYI